IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN C M.,[1]  )
        Plaintiff,  )
vs.  ) Case No. 18-cv-546-CJP[2]
COMMISSIONER of SOCIAL SECURITY,  )
        Defendant.  )

**MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for benefits in May 2014, alleging disability beginning on October 30, 2010. After holding an evidentiary hearing, ALJ Stephan Bell denied the application on May 26, 2017. (Tr. 19-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 14.

## Issue Raised by Plaintiff

Plaintiff raises the following point:

1. Whether the ALJ erred by failing to account for deficits of concentration, persistence, or pace in the residual functional capacity finding.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[3]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245

F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Bell followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2016. The ALJ found that plaintiff had severe impairments of neurocognitive disorder status post traumatic brain injury, schizophrenia, schizoaffective disorder, bipolar affective disorder, generalized anxiety disorder, cannabis and alcohol abuse, and hypogonadism. He determined that these impairments did not meet or equal a listed impairment. At this step, the ALJ determined that plaintiff had moderate difficulties in ability to maintain concentration, persistence or pace. (Tr. 23).

The ALJ determined that plaintiff had the residual functional capacity (RFC) to do "medium work … except he can never work at unprotected heights, be exposed to moving mechanical parts, or operate a motor vehicle as a job duty. He is limited to simple, routine and repetitive tasks and simple work-related decisions. He can have occasional interaction with coworkers and supervisors, but no interaction with the public."

Based upon the testimony of a vocational expert, the ALJ found that plaintiff could not perform his past work. However, he was not disabled because he was capable of performing other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record

5

is directed to the point raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was born in 1982 and was 28 years old on the alleged date of disability. (Tr. 224). He had worked as a telephone customer service representative and a telemarketer. (Tr. 247).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in April 2017. (Tr. 36).

Plaintiff testified regarding his impairments, symptoms, and activities. He suffered a brain injury in a fall in 2010. Since then, he had panic attacks. He had difficulty concentrating. He took Klonopin, which helped, but did not stop his panic attacks. He also received an Invega injection once a month to help control the symptoms of schizophrenia (auditory and visual hallucinations). (Tr. 40-54).

A vocational expert also testified. The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that this person could do jobs such as kitchen helper, laundry laborer, and linen room attendant. She testified that he would be unemployable if he were to miss 2 days of work a month or he were to be off-task for more than 20% of the work day. (Tr. 59-63).

3. **State Agency Consultants' Mental RFC Assessment**

In October 2014, acting as a state agency consultant, Donald Henson, Ph.D., assessed plaintiff's mental RFC based on a review of the file contents. He used an

electronic version of an agency form that is commonly used for this purpose in social security cases. (Tr. 71-74). The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's limitations in these areas.

Dr. Henson answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" He rated plaintiff as "moderately limited" in ability to carry out detailed instructions; ability to perform activities within a schedule, maintain regular attendance, and be punctual; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He also rated plaintiff "not significantly limited" in ability to maintain attention and concentration for extended periods. In the section for narrative remarks, Dr. Henson wrote, "The degree [of] functional limitation that is reported is not consistent with the available medical/psychological evidence and there is no credible evidence that the severity of mental symptoms would preclude the ability to perform simple routine activities which have few social demands." (Tr. 72).

A second state agency consultant, Dr. DiFonso, agreed with Dr. Henson's analysis in May 2015. (Tr. 96-97).

## **Analysis**

Plaintiff argues that the RFC assessment was erroneous because it failed to account for his moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. He noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 23-24). Later, when explaining his RFC assessment, the ALJ gave "great weight" to the opinions of Drs. Henson and DiFonso. (Tr. 26). However, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence or pace. Rather, the ALJ limited plaintiff to simple, routine, repetitive tasks and simple work-related decisions.

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or

8

pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016).

The Commissioner attempts to distinguish *O'Connor-Spinner* on the basis that the ALJ here added mental limitations that were not part of the RFC in that case, i.e., limitations to simple work-related decisions; occasional interaction with co-workers and supervisors; and no interaction with the public. Doc. 19, p. 7. Her argument is not convincing. First, it is not clear that a limitation to simple decisions adds anything beyond a limitation to unskilled work. And, that argument contradicts the ALJ's own reasoning. The ALJ explained that the limitations on interactions with others were designed to accommodate his anxiety, panic attacks, periodic hallucinations, anger, and uncooperative behavior. His "decreased concentration, memory, and cognition" were addressed by the limitation to simple tasks and decisions. (Tr. 27). The ALJ's decision cannot be upheld based upon the Commissioner's after-the-fact rationalization. *Hughes v. Astrue*, 705 F.3d 276, 279(7th Cir. 2013) ("Characteristically, and sanctionably, the government's brief violates the *Chenery* doctrine….."); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its

decision on a ground that the agency had not relied on in its decision....").

The Commissioner defends the ALJ's decision by arguing that Drs. Henson and DiFonso said in their narrative remarks that plaintiff could do work requiring only simple, routine activities which have few social demands. Doc. 19, p. 8. She argues that the narrative section of the form constitutes the actual RFC assessment, and that the ALJ may therefore disregard the earlier "worksheet" section of the form completed by the state agency consultant. This is incorrect. "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). This argument is also somewhat of a red herring because the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace and said that the RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 23-24). The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Drs. Henson and DiFonso opined that plaintiff also had moderate limitations in ability to perform activities within a schedule, maintain regular attendance, and be punctual; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent

pace without an unreasonable number and length of rest periods. The ALJ ignored this part of the state agency consultants' opinions in his decision.

Lastly, the Commissioner complains that plaintiff is trying to shift the burden of proving his claim to the agency. Doc. 19, p. 9. She ignores the fact that, at step five, the burden shifts to her to show that the claimant can perform some other job. *Rhoderick*, 737 F.2d at 715; *Zurawski,* 245 F.3d at 886.

The ALJ's error requires remand. "If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir., 2012)(internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: November 28, 2018.**

s/ Clifford J. Proud
**CLIFFIRD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**